## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JESSIE WILLIAMS #254-607 | * | |
| Plaintiff | * | |
| v. | * | CIVIL ACTION NO. L-11-1871 |
| CORRECTIONAL MEDICAL SERVICES, INC., et al. | * | |
| | * | |
| Defendants | | |

## **MEMORANDUM**

On July 6, 2011, Jessie Williams, ("Williams") then a Maryland Division of Correction ("DOC") prisoner confined at Western Correctional Institution at Cumberland ("WCI"),[1] filed a civil rights Complaint filed pursuant to 42 U.S.C. § 1983 seeking money damages.  Distilled to its basic element, Williams complains that his health has been jeopardized because prison health care providers knew he tested positive for the Hepatitis C virus ("HCV") in 2003, but failed to provide him adequate treatment for the disease.  Defendant Corizon, Inc. ("Corizon", formerly known as Correctional Medical Services, Inc., or "CMS") has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 10), which Williams has opposed.  ECF No. 16.  No hearing is necessary.  See Local Rule 105.6 (D. Md. 2011).  For the reasons stated below, the dispositive motion filed by Corizon, treated as a Motion for Summary Judgment, will be granted.

---

[1] Courthouse staff have determined that Williams was mandatorily released from the DOC on August 30, 2011, and taken into custody by Florida officials pursuant to a detainer.  He presently is confined at the Reception and Medical Center in Lake Butler, Florida.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Plaintiff's allegation against Corizon is based solely upon vicarious liability, otherwise known as the doctrine of respondeat superior.  The law in the Fourth Circuit is well established that the doctrine does not apply in § 1983 claims, even where the Defendant is a private corporation, rather than a municipality or other public agency.  See Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); Nedd v. Correctional Medical Services, Civil Action No. JFM-92-1524 (D. Md., October 22, 1992), citing Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982); McIlwain v. Prince William Hospital, 774 F. Supp. 986, 990 (E.D.Va. 1991).  Corizon is entitled to dismissal in this case.  The Court's inquiry, however, does not end there.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.[2]  Gregg v. Georgia, 428 U.S. 153, 173 (1976).  To state an Eighth Amendment claim for denial of medical care, Plaintiff must demonstrate that the actions of medical personnel (or a failure to act) amounted to deliberate indifference to a serious medical need.[3]  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, prison medical staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. See Farmer v. Brennan, 511 U.S. 825, 837 (1994).  "True subjective recklessness

---

[2] Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003), citing Wilson v. Seiter, 501 U.S. 294, 297 (1991).

[3] To the extent Williams seeks damages on the basis of a state law negligence or malpractice claim, such a claim would be subject to exhaustion of administrative review before the Maryland Health Claims Arbitration Board.  See generally Md. Code Ann., Cts. & Jud. Proc., § 3-2A-01 et seq.  As the civil rights aspect of Williams' case cannot prevail, the undersigned declines to exercise supplemental jurisdiction with regard to any negligence or medical malpractice claim.

requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 105 (4th Cir. 1995), quoting Farmer, 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." Farmer, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. See Brown v. Harris, 240 F.3d 383 (4th Cir. 2001), citing Liebe v. Norton, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

As noted above, the medical condition at issue must be serious. See Hudson v. McMillian, 503 U. S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Williams complains that he was denied treatment despite a diagnosis of infection with HCV[4] because of his age and the fact that he was due to be released from the DOC by 2012.

There is no doubt that HCV is a serious medical condition that can lead to serious consequences in a portion of those infected.[5] Prisoner allegations of denial of care for HCV infection are not new in this district. From previous litigation in this district, the undersigned

---

[4] Hepatitis C can become a chronic condition. See National Digestive Diseases Information Clearinghouse, http://digestive.niddk.gov/ddiseases/pubs/hepc_ez/index.aspx.

[5] Treatment consists of a combination of two antiviral medications, interferon and ribavirin, or the use of interferon alone, and is recommended for those with chronic HCV who exhibit at least moderate liver inflammation and necrosis, and treatment itself may produce poor results and substantial side effects. See Strand v. Correctional Medical Services, Civil Action No. AW-09-1430, Memorandum opinion of January 19, 2010, ECF No. 18 at 4, n.5. In determining whether a prisoner should undergo antiviral therapy, medical personnel consider the severity of liver disease, the potential for adverse reactions, and -- because the treatment takes time -- the length of the prisoner's incarceration. Id.

knows that HCV is a disease of the liver passed through infected blood or blood products (often during illegal intravenous drug use) that may become a chronic condition causing scarring of the liver.  More than one-fourth of those infected will recover without problems, although minor scarring (fibrosis) may occur, or more damaging scarring, known as cirrhosis, may result.  Some patients with cirrhosis develop liver failure or other complications.  See Worsham v. Governor, Civil Action No. JFM-03-628 (D. Md.), Declaration of Sharon Baucom, M.D., ¶ 4, attached as ECF No. 19, Exhibit C in Johnson v. Saar, Civil Action No. PJM-07-343 (D. Md.).

Under current DPSCS policy,[6] a patient can receive antiviral therapy if approved for treatment by the DPSCS Hepatitis C Clinical Review Panel ("Panel").  ECF No. 10, Exhibit A, ¶ 4; see also Buxton v. Baucom, et al., Civil Action No. PJM-10-2211 (D. Md.), ECF No. 26, Exhibit A, ¶ 4.  The Panel determines whether to treat or defer treatment, which can include a liver biopsy.  Id.

Williams tested positive for HCV in 2002.  For the past three years, his condition has been monitored in the Chronic Care Clinic every three to four months.  Williams, who is a compliant patient, has never exhibited signs or symptoms of liver damage caused by HCV.[7]  His ALT level[8] has always tested normal.  Testing revealed he is infected with viral genotype 1b. ECF No. 10, Exhibit B at 14; ECF No. 3 at 6.  On February 25, 2009, Williams requested treatment for his condition.  Dr. Ava Joubert ordered a blood test to check Williams' viral load.

---

[6] The policy protocol was developed and approved by infectious disease specialists from the University of Maryland Institute of Human Virology and the Johns Hopkins University.  See Buston v. Baucom, Civil Action No. PJM-10-2211 (D. Md.), ECF No. 26, Exhibit A, ¶ 4; see also Infection Control Manual, attached thereto.

[7] In his opposition motion, Williams alleges he is limited in his daily activities and in pain due to his condition.  ECF No. 16 at 3-4.  The medical record simply does not support this bald claim.

[8] ALT, or alanine aminotransferase, is an enzyme which, when concentrated in the blood, may indicate the presence of viral hepatitis.  See Stedman's Medical Dictionary, 27th Edition, pg. 40.  The release of ALT into the bloodstream occurs due to liver damage.  See Strand v. CMS, Civil Action No. AW-09-1430 (D. Md.), Memorandum opinion, ECF No. 18 at 5, n.6.

Blood work taken one month later revealed a normal ALT level and an abnormal viral load (presence of virus).  Blood work was repeated in June 2009, at which time Dr. Joubert submitted a consultation request for Williams to be evaluated for a liver biopsy.  ECF No. 10, Exhibit A, ¶ 7.  Williams was transferred from Maryland Correctional Training Center ("MCTC") to WCI on September 8, 2009.  Id., Exhibit A, ¶ 9.  Two weeks later he was examined in WCI's Chronic Care Clinic by Dr. Colin Ottey.  Blood work on November 13, 2009, revealed a normal ALT level with an abnormal viral load.  Id., Exhibit A, ¶ 10.

Additional blood work taken on February 29, 2010, again showed normal ALT readings. Id., ¶ 11.  On April 10, 2010, Dr. Ottey evaluated Williams in the Chronic Care Clinic.  Williams reported itching and a three-pound weight loss.  Blood work was again performed.  On April 23, 2010, Williams signed a consent form to be reviewed for HCV treatment.  A consultation request was submitted for Williams to be evaluated by psychiatry staff to see if he was a good candidate to undergo treatment.  Id., Exhibit A, ¶ 14.  Psychiatry approval was granted and on May 13, 2010, nursing staff charted that Williams attended a teleconference with the Infection Control Department concerning his infection, obtaining education about the condition and learning that the Panel would review his case.  Williams' past ALT results were explained to him.  Id., Exhibit A, ¶¶ 15-16.

May 20, 2010 blood work showed that Williams' viral load, although still abnormal, had decreased.  Id., Exhibit A, ¶ 17.  The initial consultation request for a liver biopsy was denied by Wexford Health Services, Inc. ("Wexford"),[9] but approved on June 21, 2010.  Id., Exhibit A, ¶¶ 18-19.  The biopsy, which occurred on July 27, 2010, showed Grade 1, Stage 0 progression, meaning that Williams had only mild inflammation ("grade") and no scarring ("stage") of the

---

[9] Wexford is the utilization review contractor for Maryland's prisons.  The company reviews and approves all requests by on-site and off-site consultants for certain medical devices and tests.  Corizon and Wexford are not affiliated.  ECF No. 10 at 14, n.3.

liver.  Given this result, Williams was advised to repeat the liver biopsy in three years (by 2013).

Because the medications used to treat HCV are toxic, treatment was not initiated.  <u>Id.</u>, Exhibit A,

¶ 20.  Four blood tests taken since that time (the last in February 2011) show normal ALT levels.

<u>Id.</u>, Exhibit A, ¶ 24.

"Disagreements between an inmate and a physician over the inmate's proper care do not

state a § 1983 claim unless exceptional circumstances are alleged."  <u>Wright v. Collins</u>, 766 F.2d

841, 849 (4th Cir. 1985).  Based on Defendant's representations, the Court finds that Williams'

health care needs have been met and his health status has been monitored.  The Court further

finds that Williams did not need antiviral treatment for HCV during his incarceration in the

Maryland DOC.  Nothing more is constitutionally required.

Corizon's dispositive motion is GRANTED.  A separate order follows.


January 11, 2012                                        /s/

                                        _____
                                        Benson Everett Legg
                                        United States District Judge